SAMUEL D. CUBBERLY, appellant,

v. .

JAMES D. CUBBERLY, respondent.

When stipulations are kept out of a contract by fraud, such contract will be reformed in equity, and specifically performed.

On appeal from a decree of the chancellor, whose opinion is reported in *Cubberly* v. *Cubberly, 6 Stew. Eq. 82.*

*Messrs. Robbins & Hartshorne,* for appellant.

*Messrs. E. L. Campbell* and *B. Gummere,* for respondent.

The opinion of the court was delivered by

BEASLEY, C. J.

This decree is affirmed on the ground that the stipulation upon which the equity of the respondents depends, was kept out of the written agreement by the covinous contrivance of the appellant; that such stipulation should therefore be incorporated into the contract, and that such contract thus reformed should be specifically performed.

PATERSON, J. (*dissenting.*)

A parol trust here is sought to be engrafted on a written agreement. In such a matter the proof should be very full, clear and beyond suspicion. Not only does that fail to come up to the level of these standards, but, in my opinion, the improbabilities against the alleged fact are strong. For this reason I cannot assent to the conclusions of the court. One of the principal beneficiaries by the compromise testifies that the appellant did not say to her he would give the poor brothers and sisters any-thing, and does not think she signed any paper expressing that condition. The last agreements of the 15th, 16th and 17th of August, 1877, executed by both beneficiaries while the settle-

Cubberly *v.* Cubberly.

ment was in progress, and alluded to therein, are not set up in the bill, and so not attacked as fraudulent, though one-half of each share is given by those to the appellant. This suppression is significant. Again, the most pronounced witnesses for the complainants testify that they were induced to agree to give the appellant a moiety of what they would obtain under the settlement, as next of kin, in order that the poor brothers and sisters might derive more benefit than from what they would take as heirs to the real estate. Then why, when the compromise was ratified, did they try to persuade the defendant to accept $2,000 as his share, and failing in that effort, force him, as it were, to pay $3,000 to the lawyer of one, and $4,000 to the son-in-law of the other, after the manner of star route perquisites? What was this, in reality, but robbing a trust they insist was sacred, and created and set apart for the needy relatives, and how can that fact be reconciled, or be consistent with the theory of the bill? Moreover, the complainants insist, for what is proved, if anything about it is, that the defendant agreed to do all the work, pay all the expenses, assume all the responsibilities, and bear all the annoyances attending the litigation of a claim of the nature and magnitude of the one in question, and, if successful, divide the profits, *per capita*, with those who had refused, absolutely, to lend any assistance, or so much even as to lift a finger in behalf of their own interest. The court below decrees, and the decision is sustained here, that the working bee in this hive shall pay more money; principal and interest, to the lazy drones than all he realized as the result of his labors. In other words, he has to pay for the music to which the poor relatives are dancers. I cannot bring myself to assent to the justice or equity of the decision, and am of opinion that it should be reversed throughout.

For affirmance — THE CHIEF-JUSTICE, DEPUE, DIXON, KNAPP, MAGIE, PARKER, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, WHITAKER—12.

For reversal—PATERSON—1.